UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                        )
CARDI CORPORATION,                      )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     C.A. No. 21-233 WES
                                        )
STATE OF RHODE ISLAND DEPARTMENT        )
OF ADMINISTRATION, et al.,              )
                                        )
          Defendants.                   )
_____)

## MEMORANDUM OF DECISION

WILLIAM E. SMITH, District Judge.

Defendants R.I. Department of Transportation ("RIDOT") and R.I. Department of Administration (collectively, the "State") tentatively awarded a bridge repair contract to Plaintiff Cardi Construction, but Defendant Federal Highway Administration ("FHWA"), which controls the relevant federal purse strings, refused to concur in the State's selection. The State therefore cancelled the solicitation and initiated a new procurement process. In this action, Cardi seeks an injunction forcing Defendants to give it the contract, arguing that the non-concurrence violated a provision of the Federal-Aid Highway Act (the "Act"), 23 U.S.C. § 101, et seq., as well as the Administrative Procedures Act ("APA"), 5 U.S.C. § 706. The Court denied Cardi's Motion for a Temporary Restraining Order, ECF No. 5, and set an expedited summary judgment briefing schedule. On

August 11, 2021, the Court issued an Order, ECF No. 34, granting Defendants' motions for summary judgment. Due to the time-sensitive nature of the proceedings, the Order was issued without a full account of the Court's reasoning. This Memorandum fills in the gaps.

I.   BACKGROUND

To obtain funding for a highway project through the Act, the State is required to solicit bids via a request for proposals. See 23 U.S.C. § 112(a). The winning contractor is to be chosen "only on the basis of the lowest responsive bid submitted by a bidder meeting established criteria of responsibility." Id. § 112(b)(1). After selecting a proposal, RIDOT must obtain FHWA's concurrence; otherwise, no money will flow from Washington. See id. The scope of FHWA's review is cabined by the following statutory language:

> No requirement or obligation shall be imposed as a condition precedent to the award of a contract to such bidder for a project, or to the Secretary's concurrence in the award of a contract to such bidder, unless such requirement or obligation is otherwise lawful and is specifically set forth in the advertised specifications.

Id. Similarly, FHWA's regulations state that design-build contracts "shall be awarded in accordance with the Request for Proposals document." 23 CFR § 635.114(k).

This case deals with the twists and turns of one such project. Rhode Island is in the process of improving the I-195 Washington

2

Bridge, which connects Providence and East Providence, spanning the Seekonk River. Joint Statement of Facts ("Joint Statement") ¶¶ 1-3, ECF No. 25; I-195 Washington Bridge, Phase 2, Request for Proposals, Part 1 ("Request for Proposals") ¶ 2.1 (April 10, 2020), ECF No. 7-1. In mid-2020, Cardi Corporation and two other companies submitted bids to complete a portion of the project. Joint Statement ¶ 7. The State selected Cardi, whose bid was the lowest by a long shot ($17 million below the others), as the best apparent value respondent. Id. ¶¶ 8-9. One of the other bidders, Barletta/Aetna, sued the R.I. Department of Administration in the Rhode Island Superior court, alleging that Cardi's participation in the previous phase of the project gave the company an unfair advantage. See Barletta/Aetna 1-195 Washington Bridge North Phase 2 JV v. State, Dept. of Admin. ("Barletta/Aetna I"), No. PC-2020-06551, 2020 WL 7774450, at *1-2 (R.I. Super. Dec. 21, 2020).

While the state court litigation was playing out, the procurement process continued. To receive funding through the Act, the State needed FHWA to concur with its selection of Cardi. See 23 U.S.C. § 112(b)(1). Accordingly, in September 2020, RIDOT submitted a request for concurrence to FHWA. See Letter from Anthony Pompei to Carlos Padilla (Sept. 16, 2020), ECF No. 1-3. A month later, RIDOT followed up, writing that a "post qualification process [wa]s ongoing." See Oct. 16, 2020 Letter, Ex. H to Compl., ECF No. 1-8. RIDOT subsequently reaffirmed its request for FHWA's

3

concurrence, writing that RIDOT had "determined through its technical evaluation, price evaluation, and final scoring that Cardi was the Apparent Best Value Respondent, as specified in the [request for proposals]." See Letter from Anthony Pompei to Carlos Padilla (Dec. 4, 2020), ECF No. 1-9. But FHWA declined to concur, stating in a letter to RIDOT that "the recommended Design-Builder was deemed to be non-responsive according to the terms of the [request for proposals]." See Letter from H. Randall Warden to Peter Alviti (Dec. 23, 2020), ECF No. 1-10. Based on FHWA's non-concurrence, the State withdrew the request for proposals and issued another, somewhat modified solicitation, with proposals due on July 2, 2021. See Letter from Peter Alviti to Carlos Machado 1 (Feb. 4, 2021), ECF No. 25-2; I-195 Washington Bridge, Phase 2, Request for Proposals, Part 1, at ¶ 2.3 (March 17, 2021), ECF No. 25-4.

Cardi then filed counterclaims in the ongoing state court case, seeking equitable relief similar to that requested here, as well as damages. See Barletta/Aetna I-195 Washington Bridge North Phase 2 JV v. State ("Barletta/Aetna II"), No. PC-2020-06551, 2021 WL 925000, at *2 (R.I. Super. Mar. 5, 2021). The superior court dismissed the equitable counterclaims (though not the claims for damages) because Cardi had failed to join FHWA, which the court ruled to be an indispensable party. Barletta/Aetna I-195 Washington Bridge North Phase 2 JV v. State, Dept. of Admin.

4

("Barletta/Aetna III"), No. PC-2020-06551, 2021 WL 1049458, at *10 (R.I. Super. March 12, 2021).  The superior court also rejected Barletta/Aetna's argument that, instead of cancelling and restarting the solicitation, the State should have turned to Barletta/Aetna, the runner up in the initial bidding.  See Barletta/Aetna II, 2021 WL 925000, at *2, *10.  Subsequently, Cardi filed its Complaint, ECF No. 1, and Motion for a Temporary Restraining Order, ECF No. 5, in this Court.  The Court declined to issue a temporary restraining order, and the parties filed cross-motions for summary judgment.  See July 7, 2021 Mem. & Order, ECF No. 24.

## II.  LEGAL STANDARD

Cardi argues that Defendants' rejection of its proposal violated the Act.  See Cardi's Cross-Motion & Mem. of Law in Supp. of Summ. J. ("Cardi's Cross-Motion") 3, ECF No. 28.  Therefore, the merits of the action are evaluated under the APA.  See Glasgow, Inc. v. Fed. Hwy. Admin., 843 F.2d 130, 133 (3d Cir. 1988).  "[A] motion for summary judgment is simply a vehicle to tee up a case for judicial review . . . ."  Bos. Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 47 (1st Cir. 2016) (citing Mass. Dep't of Pub. Welfare v. Sec'y of Agric., 984 F.2d 514, 526 (1st Cir. 1993)).  Pursuant to the APA's deferential standard, a court may vacate or reverse an agency decision only if "it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

5

with law.'" Sorreda Transport, LLC v. U.S. Dept. of Transportation, 980 F.3d 1, 3-4 (1st Cir. 2020) (quoting Darrell Andrews Trucking, Inc. v. Fed. Motor Carrier Safety Admin., 296 F.3d 1120, 1124 (D.C. Cir. 2002)); see also 5 U.S.C. § 706(2)(A). Moreover, the Court defers to the agency's factfinding "unless 'the record evidence would compel a reasonable factfinder to make a contrary determination.'" Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003) (quoting Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999)).

III. DISCUSSION

As explained below, Cardi has statutory standing to challenge FHWA's decision. Moreover, review is not blocked by Rooker-Feldman, the law of the case, or the other doctrines raised by the State. Nonetheless, Cardi has identified no adequate basis for overturning the State's cancellation of the solicitation. "Therefore, the Court need not decide whether FHWA's decision was arbitrary and capricious; either way, Cardi's request for relief would fall short." Aug. 11, 2021 Order, ECF No. 34.

A. Statutory Standing[1]

To seek redress for a statutory violation, a federal-court plaintiff must have statutory standing. Vander Luitgaren v. Sun

---

[1] FHWA challenges only Cardi's statutory standing, not its constitutional standing under Article III. See United States' Mot. for Summ. J. ("FHWA's Mot.") 9, ECF No. 27.

Life Assur. Co. of Canada, 765 F.3d 59, 62 (1st Cir. 2014). This generally requires that "Congress has accorded this injured plaintiff the right to sue the defendant" under the statute at issue. Id. (quoting Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007)). In the APA context, though, the test "is not meant to be especially demanding" because Congress had the "evident intent . . . to make agency action presumptively reviewable." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 225 (2012) (quoting Clarke v. Securities Indus. Assn., 479 U.S. 388, 399-400 (1987)). Therefore, a claimant will have statutory standing unless its "interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." Id. (quoting Clarke, 479 U.S. at 399).

Cardi claims violations of 23 U.S.C. § 112(b)(1). That provision explicitly discusses bidders who, like Cardi, have been selected by the state. See 23 U.S.C. § 112(b)(1). Furthermore, the statute limits the reasons for which FHWA can refuse to concur with the selection of any such bidder. Id. Thus, on first blush, Cardi has statutory standing because its claims are "arguably within the zone of interests to be protected or regulated by the statute." See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians, 567 U.S. at 224 (quoting Assoc. of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)); see also Glasgow,

7

843 F.2d at 135 (declining to resolve the question of standing, but stating that "a substantial argument can be made that [the plaintiff's] interest as a disappointed bidder is not 'so marginally related or so inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit [its] suit.'" (quoting Clarke, 479 U.S. at 399).

FHWA contends otherwise, relying heavily on Town of Portsmouth v. Lewis, 813 F.3d 54 (1st Cir. 2016). See United States' Mot. for Summ. J. ("FHWA's Mot.") 11-13, ECF No. 27. There, a municipality sued state defendants, alleging a violation of 23 U.S.C. § 301, which prohibits the collection of tolls on most highways that receive funding through the Act. See Portsmouth, 813 F.3d at 63 (quoting 23 U.S.C. § 301). The municipality sought the refund of certain tolls, in part to the motorists who paid them. Id. at 58; Town of Portsmouth v. Lewis, 62 F. Supp. 3d 233, 239-40 (D.R.I. 2014). However, the court ruled that 23 U.S.C. § 301 did not create a private right of action. Portsmouth, 813 F.3d at 62.

FHWA's reliance on this case is misplaced. First, the plaintiff in Portsmouth sought to establish an implied right of action, which requires "an unmistakable focus on the benefited class." Portsmouth, 813 F.3d at 62 (citation omitted). Statutory standing, on the other hand, has the opposite slant, requiring merely that the claims are "arguably within the [statute's] zone

8

of interests." <u>Assoc. of Data Processing Serv. Orgs.</u>, 397 U.S. at 153.[2]  Second, 23 U.S.C. § 301 contains no mention of would-be private plaintiffs (i.e., motorists subjected to forbidden tolling).  <u>See</u> <u>Portsmouth</u>, 813 F.3d at 63 (emphasizing that "the statute is worded in the language of government highway policy and practice, not the entitlements of motorists who use toll bridges").  Conversely, 23 U.S.C. § 112(b)(1) explicitly discusses bidders who, like Cardi, have been tentatively selected by the state.  Furthermore, the statute protects such bidders by prohibiting FHWA from imposing any conditions precedent on their proposals.  <u>See</u> 23 U.S.C. § 112(b)(1).  Lastly, the <u>Portsmouth</u> court reasoned that private litigants do not have the right to enforce 23 U.S.C. § 301's tolling prohibition because FHWA is tasked with enforcing the prohibition through its power to withhold federal funds.  813 F.3d at 63 (citing 23 U.S.C. §§ 105(a), 106(a), 109, 116(d)).  Here, that analysis is inapplicable because the Court is reviewing FHWA's exercise of that very power, and it would be illogical to presume that FHWA is responsible for policing itself.[3]

---

[2] Here, unlike in <u>Portsmouth</u>, Cardi's cause of action comes from the APA.  <u>Cf.</u> 813 F.3d at 63 (noting that the plaintiff "did not plead an APA claim in a separate count or as a cause of action").

[3] The other cases cited by FHWA, <u>see</u> FHWA's Mot. 11-13, are distinguishable for similar reasons.  <u>See</u> <u>Duit Constr. Co. v. Bennett</u>, 796 F.3d 938, 939-41 (8th Cir. 2015) (holding that the plaintiff, who sued state highway officials under 42 U.S.C. § 1983, lacked injury in fact under Article III regarding its claim that

FHWA also argues that Cardi is no different from a hypothetical bidder who, after being rejected by RIDOT, challenged FHWA's decision to concur with the state's selection.  See United States' Reply 3-4, ECF No. 33.   According to FHWA, that hypothetical plaintiff would lack standing, and Cardi therefore lacks standing as well.   The Court disagrees.   Cardi's baseline argument is that FHWA exceeded its authority; thus, the presumption in favor of reviewing a federal agency's decision applies in full. See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians, 567 U.S. at 225.   In FHWA's hypothetical, the rejected bidder's arguments would be targeted primarily at the state's decision, not FHWA's decision, so the presumption would not apply to the same degree.

Therefore, Cardi has statutory standing to challenge FHWA's decision.

---

the defendants violated 23 U.S.C. § 112(e)); Taubman Realty Grp. Ltd. P'ship v. Mineta, 320 F.3d 475, 481 (4th Cir. 2003) (holding that the plaintiff lacked standing to challenge the state's action, and rejecting "the proposition that the value of privately held commercial property near an interstate highway subject to the FAHA is within the zone of interests intended to be protected by [23 U.S.C. § 111(a)]'s requirement that the Secretary of Transportation or its designee approve all changes in access to interstate highways"); KM Enters. v. McDonald, 11-CV-5098 ADS ETB, 2012 WL 4472010, at *13-16 (E.D.N.Y. Sept. 25, 2012) (holding, in a non-APA suit, that the plaintiff did not have standing for claim that state government had not complied with an FHWA regulation requiring competitive bidding).

B.  <u>Rooker</u>-<u>Feldman</u>, Abstention, and More

In a doctrinal scattershot, the State argues that the cancellation of the initial procurement and the state court's rulings regarding that cancellation thwart Cardi's challenge.  The basic thrust of these arguments – that Cardi cannot successfully challenge the State's cancellation of the solicitation – is attractive.  But these doctrines do not quite fit these facts.

i.  <u>Rooker</u>-<u>Feldman</u>

Under the <u>Rooker</u>-<u>Feldman</u> doctrine, federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 283-84 (2005) (citing <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>D.C. Ct. of Appeals v. Feldman</u>, 460 U.S. 462 (1983)).  The doctrine does not apply "unless, <u>inter alia</u>, the federal plaintiff seeks redress of an injury <u>caused by</u> an allegedly erroneous state court decision; if the plaintiff alleges a constitutional violation by an adverse party independent of the injury caused by the state court judgment, the doctrine does not bar jurisdiction."  <u>Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps.</u>, 471 F.3d 220, 222-23 (1st Cir. 2006) (citing <u>Exxon Mobil</u>, 544 U.S. at 284).

Here, the State argues that Cardi impermissibly seeks review of two of the state court's decisions.  See State's Mot. to Dismiss and/or for Summ. J. ("State's Mot.") 8-12, ECF No. 26.  The first decision dispensed with a motion brought by the state court plaintiff, Barletta/Aetna.  After FHWA declined to concur in the selection of Cardi, Barletta/Aetna sought to amend its complaint to argue that the State should have engaged in competitive negotiations with Barletta/Aetna instead of cancelling and restarting the solicitation.  See Barletta/Aetna II, 2021 WL 925000, at *2.  The superior court rejected that argument, thus giving some level of approval to the cancellation.  See id. At *10.  However, it was not Cardi's motion that was denied; nor was it Cardi's argument that was rejected.  Therefore, Cardi was not a state court loser.

In the second relevant state court decision, the superior court dismissed Cardi's equitable claims based on its failure to join FHWA in the suit.  See Barletta/Aetna III, 2021 WL 1049458, at *10.  Importantly, though, the basis for that ruling was the superior court's lack of jurisdiction; the merits were left unaddressed.  See id.  This Court's inquiry will not involve the scope of the superior court's jurisdiction, so there will be no review of the prior decision.  In sum, the Rooker-Feldman doctrine is inapplicable.

ii.  Law of the Case

Next, the State contends that the law of the case dictates that the cancellation of the procurement was lawful, and relief is therefore unavailable.  See State's Mot. 8-12.  Under this doctrine, "a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court."  Negrón-Almeda v. Santiago, 579 F.3d 45, 50-51 (1st Cir. 2009) (quoting United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004)).  "[I]nterlocutory orders . . . remain open to trial court reconsideration, and do not constitute law of the case."  Id. (quoting Pérez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994)).

As discussed, the superior court rejected Barletta/Aetna's argument that the State should have engaged in competitive negotiations, but the court did not unconditionally approve all aspects of the cancellation.  See Barletta/Aetna II, 2021 WL 925000, at *3, 10.  Significantly, the superior court did not reach Cardi's arguments that FHWA's non-concurrence was unlawful and that the solicitation therefore should not have been cancelled.  See Barletta/Aetna III, 2021 WL 1049458, at *10.  Therefore, the law-of-the-case doctrine is beside the point.

iii. <u>Colorado River</u> Abstention

The State also contends that the Court should abstain from exercising jurisdiction based on the <u>Colorado River</u> doctrine, which allows for abstention in certain "exceptional" circumstances "involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817-18 (1976). Relevant factors include:

> (1) whether either court has assumed jurisdiction over a <u>res</u>; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

<u>Rio Grande Community Health Ctr., Inc. v. Rullan</u>, 397 F.3d 56, 71-72 (1st Cir. 2005).

As an initial matter, Cardi's claims for injunctive relief are no longer pending in the state court, so it is unclear whether the basic circumstances contemplated by the doctrine – "the contemporaneous exercise of concurrent jurisdictions" – are present. <u>See</u> <u>Colorado River</u>, 424 U.S. at 817.

Regardless, the factors articulated by the First Circuit militate against abstention. The first, second, and eighth factors involve circumstances not present here (jurisdiction over a res, geographical inconvenience, and removal from state to federal

14

court).  And because the state court dismissed Cardi's equitable claims without prejudice, the third, fourth, and sixth factors (addressing potential tensions in concurrent litigations) do not help the State's cause.  Cardi's claims are, for the most part, well-founded in federal law, so the fifth factor weighs against abstention.  Lastly, looking to the seventh factor, the claims are neither vexatious nor contrived.  Because no factor favors the State's argument, abstention is clearly inappropriate.

   iv.  Mootness

 The State also argues that the case is moot because the initial procurement has been cancelled and the cancellation has been approved by the superior court.  See State's Mot. 14-17.  In general, a request for injunctive relief is moot if "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Metro-Goldwyn Mayer, Inc. v. 007 Safety Products, Inc., 183 F.3d 10, 15 (1st Cir. 1999) (quoting County. of Los Angeles v. Davis, 440 U.S. 625, 631 (1979)).

 Here, the bridge construction has not yet begun.  Thus, unlike in the cases cited by the State, it is not too late for the Court to grant relief.  Cf. H.V. Collins Co. v. Williams, 990 A.2d 845, 846-48 (R.I. 2010) (holding that a challenge to the award of a construction contract to another company was moot because the

15

construction project had already been substantially completed); Sinapi v. R.I. Bd. of Bar Examiners, 910 F.3d 544, 548 (1st Cir. 2018) (rejecting appeal of temporary restraining order, which had required the defendant to provide accommodations to the plaintiff during the bar examination, because the test had already been administered by the time of the appeal).  The dispute has not become moot; rather, as will be explained, the requested relief lacks a legal basis.

C.   Validity of FHWA's Non-Concurrence

By statute FHWA can refuse to concur only if the proposal fails to satisfy a "requirement or obligation" that "is specifically set forth in the advertised specifications."  23 U.S.C. § 112(b)(1).  Cardi argues that FHWA's reasons for non-concurrence were outside the bounds of § 112(b)(1) and were not supported by substantial evidence.  See Cardi's Mot. 11-18.

The parties have identified just two cases in which a federal court has reviewed an FHWA non-concurrence decision.  In Clark Construction Co. v. Pena, the court held that FHWA's reason for denying concurrence – the absence of a traffic control plan in the plaintiff's proposal – was unlawful because it was not listed as a requirement in the request for proposals.  See 930 F. Supp. 1470, 1482-83 (M.D. Ala. 1996).

In Glasgow, the state initially selected the plaintiff, but later retracted the offer due to an alleged failure to comply with

16

the Act's requirement that the contractor make good-faith efforts to use minority-owned subcontractors for a certain percentage of the project.  See 843 F.2d at 130-32.  The plaintiff sued in state court, and the state settled the case, agreeing to utilize the plaintiff despite the plaintiff's failure to meet the goal.  Id. at 132-33.  However, when the state sought FHWA's concurrence, the agency declined, concluding "that the procedures followed by [the state] in settling its lawsuit with [the plaintiff] amounted to unfair interference with the competitive bidding process and a violation of the [regulations relating to using minority-owned businesses]."  Id. at 133.  The district court ordered FHWA to concur, concluding that "FHWA's action is purely ministerial and thus it must concur if the conditions precedent are fulfilled." Id.

The Third Circuit reversed, stating that "it would be astounding to find that Congress has limited the FHWA's function in a situation involving the expenditure of tens of millions of federal tax dollars to that of rubber-stamping a contract award decision by a state agency."  Id. at 136.  Rather, the Act, "in general, indicates that the FHWA is to have discretion in its administration" and "in setting standards for proposed projects." Id. (citing 23 U.S.C. § 109).  The court examined internal FHWA memoranda which stated, inter alia, that "there was ample support for the [state's original] conclusion that [the plaintiff] did not

17

demonstrate good faith efforts." Id. at 137-38. The court ruled that these memoranda provided an adequate basis for non-concurrence, and FHWA therefore did not abuse its discretion. Id. at 138.

Here, FHWA has pointed to internal emails as justification for its non-concurrence. For example, an FHWA employee named Anthony Palombo wrote that "RIDOT's own evaluation of the Technical Proposal . . . seems to be making the case for disqualifying this contractor as non-responsive to the [request for proposals], and further states what the contractor is proposing is infeasible to the project." E-mail from Anthony Palombo to Carlos Padilla (undated), ECF No. 8-2. Palombo continued: "What is puzzling is why, after such negative findings, is this proposer still being forwarded as responsive and qualified for consideration. . . . [N]one of the other [companies that submitted proposals] have disqualifying findings or commentary." Palombo relied, in part, on the following passages from a RIDOT memorandum that evaluated all of the bidders' technical proposals:

> The documentation materials provided by [Cardi] with respect to highway, traffic and staging was found to be of marginal quality and details were missing.
> . . .
> The modeling of traffic analysis for this [alternative technical concept] was not provided, which was a requirement of the [request for proposals], rather only a qualitative overview was provided. The proposed final lane configuration would result in the need to revise [certain aspects of the project] which is not feasible for [RIDOT].

18

> . . .
> Some of Cardi's proposed bridge design options were
> found to be unacceptable and were contrary to the [base
> technical concept] objectives.

E-mail from Anthony Palombo to Carlos Padilla (undated), ECF No. 8-2 (quoting Mem. from Everett Sammartino to Anthony Pompei 7 (July 27, 2020), ECF No. 8-3).   Moreover, as emphasized by Palombo, Cardi's proposal received a 3/10 and 4/10 in two technical categories, as well as an overall technical score that was much lower than the competing proposals.   See E-mail from Anthony Palombo to Carlos Padilla (Sept. 18, 2020), ECF No. 15-2.

As stated in the Court's decision declining to issue a temporary restraining order, the "technical score is [arguably] a way of quantifying the proposer's likelihood of successfully completing the objectives of the project.  If FHWA were forbidden from considering things such as a low technical score, FHWA's role would be reduced to the ministerial task of checking that the paperwork was in order."  July 7, 2021 Mem. & Order 6, ECF No. 24.

Thus, were those communications the sum total of the evidence, the Court could easily conclude that, like in Glasgow, FHWA permissibly denied concurrence based on the State's documented critiques of Cardi's proposal.  Moreover, the Court would conclude that, unlike in Clark Construction, FHWA did not invent a

requirement disconnected from those identified in the request for proposals.[4]

However, there is evidence that the technical evaluation addressed only the alternative technical concepts in Cardi's proposal, not the base technical concept.  See E-mail from Carlos Padilla to Gerald Yakowenko (Dec. 14, 2020), ECF No. 8-10. Moreover, it seems that RIDOT was unconcerned with the shortcomings of Cardi's alternative concepts precisely because the State was planning to reject those concepts and engage Cardi to complete the base concept only.  See Letter from Anthony Pompei to Carlos Padilla (Dec. 4, 2020), ECF No. 1-9.  Lastly, though FHWA may not have been aware at first of the peripheral nature of the technical evaluations, the message had been conveyed prior to FHWA's final decision against concurrence.  Id.

This presents a quandary.  On the one hand, FHWA can point to legitimate reasons for non-concurrence.  On the other hand, FHWA later learned that those reasons might have been based largely on a miscommunication.  While it is odd that RIDOT would select Cardi after so thoroughly criticizing its alternative technical

---

[4] Cardi argues "[t]he Joint Statement of Facts establishes that the September 2020 emails from FHWA staff were recommendations and that the substantive basis for FHWA's ultimate decision on December 23, 2020, was set forth in an email dated December 11, 2020."  Cardi's Mot. 3-4 (citing Joint Statement of Facts ¶ 29). The Court does not interpret paragraph 29 of the Joint Statement to contain such a circumscribed account of FHWA's reasons for non-concurrence.

concepts, there is reason to believe that FHWA should have taken
RIDOT at its word and treated those criticisms as irrelevant.
Given the close legal and factual calls involved in this inquiry,
the Court declines to resolve whether FHWA's actions violated
federal law.  As will be explained, Cardi cannot obtain relief
either way.

D.   Lack of Remedy

As discussed, the first solicitation was cancelled several
months ago, and a new solicitation is well on its way.  Therefore,
were the Court to merely vacate FHWA's non-concurrence and remand
the case to FHWA for reconsideration (or even order FHWA to concur
with the State's original selection), Cardi would get no tangible
benefit.  The State would carry on with the second process, and
Cardi would remain out of a job.  It is for this reason that Cardi
not only seeks to vacate FHWA's non-concurrence, but also to force
the State to cancel the second solicitation, renew the first, and
award the contract to Cardi.  See Compl. ¶ 70, ECF No. 1.

The Court sees no way to bridge the gap between the alleged
unlawfulness and this requested relief.  In Clark Construction,
the court concluded that FHWA's non-concurrence violated
§ 112(b)(1) and that the state department of transportation should
have appealed the local FHWA branch's decision to FHWA's regional
office.  See 930 F. Supp. at 1489.  By cancelling the solicitation
instead, the court reasoned that the state "blatantly disregarded

21

§ 112(b)(1)." Id. But which part of § 112(b)(1) was blatantly disregarded? It is not clear. Seemingly, the court reasoned that § 112(b)(1) seeks to protect the competitive bidding process, and that the state violated the spirit of the statute by resoliciting the contract after the plaintiff's winning bid had become public information. See id. at 1488-91. Frowning upon this action, the court ruled that the re-solicitation thus created an "impermissible auction."[5]

That outcome would be inappropriate here. First, Clark Construction is built on a shaky foundation: the assumption that states have an affirmative obligation to ensure FHWA complies with the Act. Under the Act, states receive funding for highway projects from FHWA, which is tasked with promulgating regulations and overseeing the awards. See, e.g., 23 U.S.C. §§ 106(a), 109, 112(b)(1), 116(d), 315. It is FHWA that oversees the state agencies, not the other way around. Cardi has pointed to no explicit statutory language requiring state agencies to enforce the Act against FHWA. And the Court will not read broad obligations into the statute based simply on the statute's emphasis on competitive bidding.

---

[5] The source of this phrase, which the Clark court put in quotations without attribution, is unknown to this Court. See Clark Const., 930 F. Supp. at 1488; Clark Const. Co., Inc. v. Pena, 895 F. Supp. 1483, 1492 (M.D. Ala. 1995).

Moreover, the impermissible-auction logic from <u>Clark Construction</u> is not applicable. In a letter to FHWA, RIDOT Director Peter Alviti wrote that cancellation was necessary, in part, for the following reasons:

> The $48,101,481 million [sic] difference between the lowest and highest bid amount was a clear indication the information in the advertised scope requires additional clarification, information, and rewording. A new solicitation will provide bidders with a much clearer understanding of the project and the scope's base technical concept. These further clarifications will also result in a narrower differentiation between received bid prices and further represents a fair opportunity to all prospective bidders . . . .

Letter from Peter Alviti to Carlos Machado 1 (Feb. 4, 2021), ECF No. 25-2. Thus, if anything, the second process will be more competitive than the first. Moreover, to the extent Cardi has been disadvantaged by the publication of certain details of its initial bid – a point disputed by Defendants, <u>see</u> State's Mot. 26-27 - that disadvantage has been at least partly self-inflicted through the disclosures it has caused through this litigation and the state court proceeding. Lastly, in <u>Clark Construction</u>, FHWA's stated reason for non-concurrence was plainly outside of the requirements of the solicitation. <u>See</u> 930 F. Supp. at 1482–83. Here, conversely, FHWA did not provide any reasons beyond non-responsiveness to accompany its official denial of concurrence. <u>See</u> Letter from H. Randall Warden to Peter Alviti (Dec. 23, 2020), ECF No. 1-10. Thus, on its face, the non-concurrence gave no

23

indication that FHWA was violating the Act it is charged with administering.  Accordingly, the Court concludes that the State's cancellation of the first solicitation did not violate the Act.

Cardi points to no other bases for overturning the State's actions; nor could it.  See Cardi's Mot. 19-20; Pl.'s Mot. for Temporary Restraining Order 17, 21-22.  The request for proposals explicitly provided that the State, "in its sole discretion," could "[r]eject any or all [p]roposals at any time prior to execution of the [c]ontract; . . . [c]onsider any relevant information from any source in making evaluations within the [p][rocurement process; . . . [i]ssue a new [request for proposals]; [and/or] . . . [a]mend, modify, or cancel and withdraw the [request for proposals]."  Request for Proposals § 2.5.  Therefore, contract law provides no basis for relief.  As for state procurement law, the bar is not easily hurdled.  See Truk Away of R.I., Inc. v. Macera Bros. of Cranston, Inc., 643 A.2d 811, 816 (R.I. 1994).  Moreover, the Eleventh Amendment would presumably bar any such attempt.  See Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 529 (1st Cir. 2009) ("[T]he Eleventh Amendment denies federal courts jurisdiction to award injunctive relief against state officials based upon violations of state law." (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 106 (1984))); see also Duit Const. Co. v. Bennett, 796 F.3d 938, 941 (8th Cir. 2015) (holding that the plaintiff failed to establish

the redressability component of Article III standing because federal courts could not dictate the state agency's procurement decisions).

Therefore, as argued by the State, Cardi has failed to establish any basis for overturning the state's cancellation and re-solicitation. See generally State's Mot. 14-27. Any relief pertaining solely to FHWA would be illusory, so the Court declines to rule on the probity of FHWA's actions. Cf. Renne v. Geary, 501 U.S. 312, 316 (1991) ("Concerns of justiciability go to the power of the federal courts to entertain disputes, and to the wisdom of their doing so.").[6]

IV.  CONCLUSION

For the reasons given here and in the Court's August 11, 2021 Order, ECF No. 34, judgment shall enter in favor of Defendants.

---

[6] The Court recognizes the tension between this conclusion and the holding that Cardi has statutory standing to challenge FHWA's actions. The inability to challenge a state's actions under § 112(b)(1) may frequently mean that statutory standing to challenge FHWA's decisions is illusory. However, the instant scenario is not the only conceivable one. Situations may arise in which plaintiffs have valid bases outside of § 112(b)(1) for challenging the state's actions, or where the state has not cancelled the solicitation, and reversal of the non-concurrence would be sufficient to rectify the injury.

IT IS SO ORDERED.

William E. Smith
District Judge
Date: September 22, 2021